IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TAYLOR WOODS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | C.A. NO. 4:17-CV-00417-ALM |
| v. | § | |
| | § | |
| STARBUCKS CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT STARBUCKS CORPORATION'S MOTION TO DISMISS AND COMPEL
ARBITRATION AND BRIEF IN SUPPORT**

Celeste R. Yeager (Attorney-in-Charge)
State Bar No. 00797715
cyeager@littler.com
Victoria Nsikak
State Bar No. 24077487
vnsikak@littler.com

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201-2931
214.880.8100 (Telephone)
214.880.0181 (Telecopier)

**ATTORNEYS FOR DEFENDANT
STARBUCKS CORPORATION**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................... 2

     A.    The Mutual Arbitration Agreement ...................................................... 2

     B.    Plaintiff Submitted an Online Application, Consented to Electronic
          Signature, and Received Notice of Starbucks' Arbitration Policy ....... 2

     C.    Plaintiff Reviews, Acknowledges and Electronically Signs the Arbitration
          Agreement during her Online Employee Onboarding Process ............ 5

     D.    Plaintiff Commences Employment with Starbucks .............................. 7

III.  ARGUMENT AND AUTHORITIES ............................................................. 7

     A.    The Federal Arbitration Act Governs the Parties' Arbitration Agreement ........... 7

     B.    The Federal Arbitration Act Mandates the Arbitration Agreement Be
          Enforced According to its Terms ........................................................ 9

          1.    Plaintiff Entered Into a Valid, Enforceable Arbitration Agreement ........ 10

     C.    The Arbitration Agreement Covers Plaintiff's Claim and Delegates
          Enforceability or Application of the Arbitration Agreement to the
          Arbitrator ........................................................................................... 12

     D.    Doubts are Resolved in Favor of Arbitration ..................................... 13

     E.    Texas Law Also Requires Enforcement of the Arbitration Agreement ............. 14

     F.    Plaintiff's Lawsuit should be Dismissed, or Alternatively, Stayed Pending
          Arbitration ......................................................................................... 15

IV.  PRAYER ......................................................................................................... 15

CERTIFICATE OF CONFERENCE ............................................................................ 17

CERTIFICATE OF SERVICE ..................................................................................... 17

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Alford v. Dean Witter Reynolds, Inc.*,
   975 F.2d 1161 (5th Cir. 1992) .......................................................................15

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
   513 U.S. 265 (1995) ..........................................................................................8

*Angelou v. African Overseas Union*,
   33 S.W.3d 269 (Tex. App.—Houston [14th Dist.] 2000, no pet.)..................10

*Anglin v. Tipps*,
   842 S.W.2d 266 (Tex. 1992)...........................................................................14

*Cantella & Co. v. Goodwin*,
   924 S.W.2d 943 (Tex. 1996)...........................................................................14

*Circuit City Stores v. Adams*,
   532 U.S. 105 (2001)...........................................................................................8

*Crossmark, Inc. v. Hazar*,
   124 S.W.3d 422 (Tex. App. – Dallas 2001, pet. denied).................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)..........................................................................................13

*Eman-Henshaw v. Park Plaza Hosp.*,
   1997 U.S. App. LEXIS 41893 (5th Cir. Tex. Oct. 20, 1997) ...................8

*Fedmet Corp. v. M/V BUYALYK*,
   194 F.3d 674 (5th Cir. 1999) ........................................................................15

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995).........................................................................................10

*Garrett v. Circuit City Stores, Inc.*,
   449 F.2d 672 (5th Cir. 2006) ..........................................................................8

*Garza v. Thomas Jude Henry, P.C.*,
   CIVIL NO. SA-14-CA-877-OLG, 2014 WL 11332307 (W.D. Tex. Dec. 4.
   2014) ...................................................................................................................9

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ..................................................................................................8

*Grant v. Houser*,
  469 Fed. Appx. 310 (5th Cir. 2012) .......................................................................10

*In re Halliburton Co.*,
  80 S.W. 3d 556 (Tex. 2002) ....................................................................................12

*Holmes v. Air Liquide USA LLC*,
  No. CIV.A. H-11-2580, 2012 U.S. Dist. LEXIS 10678, 2012 WL 267194
  (S.D. Tex. Jan. 30, 2012), *aff'd sub nom. Holmes v. Air Liquide USA, L.L.C.*,
  498 F. App'x 405 (5th Cir. 2012) .....................................................................10, 11

*Horne v. Starbucks Corp., et. al*,
  2:16-CV-02727-MCE-CKD, 2017 WL 2813170 (E.D. Cal. June 29, 2017) ....................1, 12

*Howsam v. Dean Witter Reynolds*,
  537 U.S. 79 (2002) ...................................................................................................9

*In re J.D. Edwards World Solutions Co.*,
  87 S.W.3d 546 (Tex. 2002) .....................................................................................14

*Kubala v. Supreme Prod. Servs., Inc.*,
  830 F.3d 199 (5th Cir. 2016) ..................................................................................13

*Lizalde v. Vista Quality Mkts.*,
  746 F.3d 222 (5th Cir. Tex. 2014) ..........................................................................11

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ...................................................................................................9

*Moses H. Cone Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ...............................................................................................9, 13

*Perry v. Thomas*,
  482 U.S. 483 (1987) .............................................................................................8, 9

*Petrofac, Inc., v. Dynmcdermott Petroleum Operations Co.*,
  687 F.3d 671 (5th Cir. 2012) ..................................................................................13

*Prudential Secs. Inc. v. Marshall*,
  909 S.W.2d 896 (Tex. 1995) ...................................................................................14

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Rent-A-Center, W., Inc. v. Jackson,*
    561 U.S. 63 (2010)..............................................................................................13

*Staggs v. Dallas Peterbilt, Ltd., L.L.P.,*
    No. Civ. 3:05-CV-1452H, 2006 WL 74077097 (N.D. Tex. Mar. 16, 2006) ......................9, 10

*Thick v. Dolgencorp of Tex., Inc.,*
    2017 U.S. Dist. LEXIS 4258 (E.D. Tex. Jan. 11, 2017)..........................................11

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574 (1960)............................................................................................14

*Volt Info. Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.,*
    489 U.S. 468 (1989)............................................................................................10

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 3-4............................................................1, 2, 7, 8, 9, 14, 15

Title VII ..................................................................................................................1, 7, 12

**Other Authorities**

AAA Employment Arbitration Rules, Rule 6a ..........................................................13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TAYLOR WOODS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO. 4:17-CV-00417-ALM |
| v. | § | |
| | § | |
| STARBUCKS CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT STARBUCKS CORPORATION'S MOTION TO DISMISS AND COMPEL
ARBITRATION AND BRIEF IN SUPPORT**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, Defendant Starbucks
Corporation ("Defendant" or "Starbucks") files this Motion to Dismiss and Compel Arbitration
and Brief in Support.  Starbucks respectfully requests the Court dismiss this case and compel
Plaintiff to submit her claims to arbitration pursuant to the parties' mutual agreement to arbitrate
her claims.

**I.**
**INTRODUCTION**

Plaintiff Taylor Woods, a former barista at Starbucks, has filed this lawsuit to assert
claims for Title VII gender discrimination, harassment and retaliation.  However, during her
online application and onboarding process at Starbucks, she received notice of and entered into a
mutual Arbitration Agreement in which she agreed to submit claims relating to her employment
to binding arbitration.  Therefore, Plaintiff's claims against Starbucks are covered by her
arbitration agreement.

Indeed, as set forth below, this exact Arbitration Agreement has been upheld recently by
another federal district court.  *Horne v. Starbucks Corp., et. al*, 2:16-CV-02727-MCE-CKD,

2017 WL 2813170, at *2 (E.D. Cal. June 29, 2017) (granting Starbucks' motion to compel arbitration pursuant to this Arbitration Agreement).  Starbucks therefore respectfully requests the Court dismiss and compel Plaintiff's claims to binding arbitration, or, in the alternative, stay this lawsuit pending completion of that arbitration, pursuant to 9 U.S.C. § 3.

## II.
## STATEMENT OF FACTS

### A.      The Mutual Arbitration Agreement

On or about October 1, 2014, Starbucks began requiring, as a condition of employment, all new hires to agree to arbitrate any claims arising out of their employment.  Ex. 1 at ¶ 4 (Declaration of Matthew Kennedy).   Starbucks expressly notifies all applicants of this requirement when an online application is submitted.  *Id*.  Moreover, since October 1, 2014 to present, applicants for retail, non-managerial jobs must apply through Starbucks' Retail Hourly Hiring ("RHH") online application website.  RHH is accessible at https://www.starbucks.com/careers/working-at-starbucks and https://www.starbucks.com/careers/retail-careers.  *Id*.   The employment application requires applicants to read information, understand questions, and provide information on six online application pages.  *Id*.  Plaintiff was required to complete and provide all information requested in the application before she was considered eligible for employment at Starbucks.  *Id*.

### B.      Plaintiff Submitted an  Online Application, Consented to Electronic Signature, and Received Notice of Starbucks' Arbitration Policy

On August 14, 2016, Plaintiff submitted an online application for employment with Starbucks via RHH.  *Id*. at ¶ 5.  To begin the online application process, RHH required Plaintiff to create an account by entering her first name, last name, and personal email address into the RHH system and to create a unique username, password, and password hint.  *Id*.  Plaintiff had to

create an account with RHH and sign in to her account in order to submit an online employment

application with Starbucks.  *Id.*, Ex. 1-A.

> After creating her RHH account with a unique username and password and signing in,

Plaintiff was directed to the "Consent and Disclosure – E-Signature" page on RHH's website.

Ex. 1 at ¶ 6; Ex. 1-B.  This page states:

> By checking the box and clicking the "I Agree" button below, you are agreeing to electronically access, receive, review, sign and authenticate certain documents, forms, and/or letters ('Materials') covered by the federal Electronic Signatures in Global and National Commerce Act ('E-SIGN')… including but not limited to an offer letter, I-9 form, wage statement; and any other employment-related documents.

> This E-Signature Consent applies to all Materials, both current and future, related to your employment with Starbucks Corporation.

> By checking the box and clicking the 'I Agree' button below, you are agreeing that your electronic signature is the equivalent of your handwritten (or wet) signature, with the same legal and binding effect. In certain cases throughout your employment, you may be asked to click buttons labeled "I Agree, "I Acknowledge," or using similar words, or otherwise electronically to acknowledge, accept, or review Materials. This E-Signature Consent applies to those instances as well.

> [. . .]

> You may withdraw your consent to receive, review, access, sign and authenticate any additional electronic Materials at any time by cancelling this E-Signature Consent. You may cancel this E-Signature Consent and withdraw your consent now by not completing this E-Signature Consent form and exiting the system. You may cancel this E-Signature Consent and withdraw your consent in the future by sending a written cancellation request to Starbucks Corporation at 2401 Utah Avenue South, Seattle, Washington 98134 or http://customerservice.starbucks.com/app/contact/ask_company_info.  [.  .  .] Withdrawal/canceling will require you to receive, review, access, sign and authenticate these Materials in hard copy instead of electronically. Receiving, reviewing, accessing, signing, and authenticating certain Materials in either electronic or hard copy is a condition of initial and/or continued employment.

At the end of this page, Plaintiff was required to check a box which states:

> By checking this box, I understand that I am:

---

**DEFENDANT STARBUCKS CORPORATION'S MOTION TO DISMISS
AND COMPEL ARBITRATION AND BRIEF IN SUPPORT – Page 3**
Firmwide:148500312.9 055187.1067

- Confirming that I can access this E-Signature Consent [. . .]
- Agreeing to electronically access, receive, review, sign and authenticate Materials related in any way to the employment with Starbucks Corporation, in place of hard copy/paper documents and handwritten signatures
- Confirming that I understand how to cancel this E-Signature Consent, should I ever want to do so [. . .]
- Agreeing that I have read, understand, and agree to all statements, agreements, and acknowledgments in this E-Signature Consent.

*See* Ex. 1 at ¶ 7; Ex. 1-B.  To move on to the next page of the RHH application, Plaintiff was required to check the box and click the "Next" button.  Ex. 1 at ¶ 7; Ex. 1-B.  Plaintiff also had the option to cancel her application.   Ex. 1 at ¶ 7; Ex. 1-B.  Plaintiff clicked next, which demonstrated that she agreed to receiving and responding to notices electronically.  Ex. 1 at ¶ 7.

The next page of Consent and Disclosure in the RHH online application contains notices relating to Starbucks' Equal Employment Opportunity policy, reasonable accommodations for disabilities, post-offer criminal background checks, privacy statement, and Starbucks' Arbitration Agreement.  Ex. 1 at ¶ 8, Ex. 1-C.  With regard to the Arbitration Agreement, this page states "[i]t is Starbucks policy that after October 1, 2014, all new hires shall be subject to an arbitration agreement as a condition of employment."  Ex. 1 at ¶ 8, Ex. 1-C.  To move to the next page, Plaintiff was required to click the "Next" button.  Ex. 1 at ¶ 8; Ex. 1-C.  Again, Plaintiff also had the option to cancel her application if she did not wish to proceed.  Ex. 1 at ¶ 8; Ex. 1-C.

During the online application process, Plaintiff was required to enter some personal information, including her home address, email address and Social Security number to complete her online application.   Ex. 1 at ¶ 9; Ex. 1-D.   Page two and three of Plaintiff's online employment application contains confirmation that Plaintiff viewed the E-Signature Statement (contained in Ex. 1-B) and consented to receive and respond to notices in electronic form.  Ex. 1 at ¶ 9; Ex. 1-D at pp. 2-3.  Page five of Plaintiff's online application indicates Plaintiff reviewed

the remaining disclosures in RHH, including the statement that "[i]t is Starbucks policy that after October 1, 2014, all new hires shall be subject to an arbitration agreement as a condition of employment" (contained in Ex. 1-C). Ex. 1 at ¶ 9; Ex. 1-D at p. 5.

**C.     Plaintiff Reviews, Acknowledges and Electronically Signs the Arbitration Agreement during her Online Employee Onboarding Process**

After receiving an offer of employment but before starting work at Starbucks, Plaintiff was required to complete the online Employee Onboarding Process on RHH. Ex. 1 at ¶ 10; Ex. 1-E. To complete this process, Plaintiff was required to sign into the RHH system by entering her first name, last name, and last four digits of her Social Security number. Ex. 1 at ¶ 10; Ex. 1-E.

During this onboarding process, Plaintiff once again agreed to receive and respond to notices and documents electronically. Ex. 1 at ¶ 11; Ex. 1-F. To move to the next page, Plaintiff clicked a box stating "I consent to receive and respond to notices in electronic form." Ex. 1 at ¶ 11; Ex. 1-F. If Plaintiff did not check this box to provide her consent, RHH would not have permitted her to move to the next page or complete the onboarding process. Ex. 1 at ¶ 11; Ex. 1-F.

After she consented to receive and respond to notices and documents electronically, Plaintiff completed the additional required steps of the onboarding process, including providing personal information, emergency contacts, and veteran or disability self-disclosures. Ex. 1 at ¶ 12; Ex. 1-G.

The onboarding process contains an "e-Signature Acceptance" page, which states:

> I agree to sign these electronic PDF documents using "click" signature technology. I understand that a record of each document and my signing of it will be stored in electronic code. I intend both the signature I inscribe with the "click" signature technology and the electronic record of it to be my legal signature to the document. I confirm that the document is "written" or "in writing" and that any accurate record of the document is an original of the document. I agree to use the

electronic click as my "written" signature, which will be electronically inscribed on the PDF document.

Ex. 1 at ¶ 13; Ex. 1-H.  Before moving to the next page in the online onboarding process, Plaintiff was required to click a box stating "Check here to agree."  Ex. 1 at ¶ 13; Ex. 1-H.  By checking this box, Plaintiff once again agreed to respond to and accept documents electronically. Ex. 1 at ¶ 13; Ex. 1-H.

After agreeing to electronically sign her onboarding documents, Plaintiff was directed to the "e-Sign Forms" page, where Plaintiff was required to electronically sign a W-4, I-9 and the Arbitration Agreement.  Ex. 1 at ¶ 14, Ex. 1-I.  The e-Sign Form page states:

> The following forms require your electronic signature. . . You must read each form before signing it. . . Each form contains an attestation and/or declaration that you must make by signing the form. You sign each form by clicking the "Sign" link associated with that form.

Ex. 1 at ¶ 14, Ex. 1-I.

The e-Sign Forms included the Arbitration Agreement.  Ex. 1 at ¶ 15, Ex. 1-J.  Plaintiff was required to view and sign the Arbitration Agreement as a condition of her employment.  Ex. 1 at ¶ 15, Ex. 1-J.  In order to accept the Arbitration Agreement, RHH required Plaintiff to open and view the Arbitration Agreement.  Ex. 1 at ¶ 15.  After Plaintiff viewed the Arbitration Agreement, the "Sign" link was activated.  *Id*.  Plaintiff could not have signed the Arbitration Agreement without activating the "Sign" link by opening and viewing the agreement on the RHH system.  *Id*.

The Arbitration Agreement provides, in relevant part:  (1) it is a Mutual Agreement to Arbitrate by Starbucks and the employee; (2) the arbitration is governed by the AAA rules; (3) Starbucks will pay all costs unique to arbitration; (4) the arbitrator will be mutually selected by the parties; (5) adequate discovery and arbitrator discretion to permit additional discovery; (6) a

requirement that the arbitrator issue a written ruling within 30 days after the conclusion of the hearing.  Ex. 1-J.

Once Plaintiff electronically signed the document, an electronic record of her signature was entered and stored in the RHH system.  Ex. 1 at ¶ 16; Ex. 1-K.  Plaintiff's e-Signature confirmation is captured in the "Onboarding" tab of Plaintiff's RHH file.  Ex. 1 at ¶ 16; Ex. 1-K. According to this electronic file, Plaintiff signed the Arbitration Agreement on September 27, 2016, at 8:08 a.m., Ex. 1 at ¶ 16; Ex. 1-K.  The RHH file confirms Plaintiff clicked the "Sign" link while logged into the RHH system (using her unique username and password).  Ex. 1 at ¶ 16; Ex. 1-K.  By electronically signing the Arbitration Agreement, Plaintiff expressly agreed that she would arbitrate any claims arising out of her employment, including her Title VII claims.

On September 27, 2016, RHH system automatically generated and sent a confirmation email to Plaintiff's personal email address (woods.taylor@icloud.com), which confirmed that Plaintiff signed the Arbitration Agreement and completed the onboarding process.  Ex. 1 at ¶ 17; Ex. 1-L.

**D.**     **Plaintiff Commences Employment with Starbucks**

After Plaintiff completed the RHH online onboarding process and electronically signed the Arbitration Agreement on September 27, 2016, she began working as a Starbucks barista. Ex. 1 at ¶ 18.  She worked four months for Starbucks until January 30, 2017.  Ex. 1 at ¶ 18; Ex. 1-L.

**III.**
**ARGUMENT AND AUTHORITIES**

**A.**     **The Federal Arbitration Act Governs the Parties' Arbitration Agreement**

The Arbitration Agreement at issue in this action is governed by the FAA.  The FAA was originally enacted in 1925 to reverse the "longstanding judicial hostility to arbitration agreements

that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Circuit City Stores v. Adams*, 532 U.S. 105, 122-23 (2001) (noting the significant benefits of arbitrating claims in the employment context.).

Section 2 of the FAA provides for enforcement of arbitration provisions in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" is the functional equivalent of "affecting commerce" and signals "an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (stating FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). Arbitration agreements between employees and companies that engage in interstate activities are subject to the FAA. *See, e.g., Eman-Henshaw v. Park Plaza Hosp.*, 1997 U.S. App. LEXIS 41893, at *4 (5th Cir. Tex. Oct. 20, 1997); *see also Adams*, 532 U.S. at 121-124 (2001) (reversing decision that declined to extend FAA to arbitration agreement between local store manager and nationwide retailer); *Garrett v. Circuit City Stores, Inc.*, 449 F.2d 672, 675 n.1 (5th Cir. 2006) (citing *Adams* and noting that "courts have regularly held that claims by employees arising under federal and state employment statutes are subject to the FAA and mandatory arbitration").

Here, the Arbitration Agreement is governed by FAA because Starbucks is engaged in interstate commerce. Starbucks owns and operates over ten thousand retail coffee shops throughout the United States, where it sells to coffee and related products to its customers. Ex. 1 at ¶ 2. Starbucks purchases goods from multiple states and transports goods across state lines for ultimate sale to its customers through its retail locations. *Id.* Thus, Starbucks is engaged in

"commerce" for the purposes of the FAA, and the FAA governs the Arbitration Agreement between Plaintiff and Starbucks.

**B.**     **The Federal Arbitration Act Mandates the Arbitration Agreement Be Enforced According to its Terms**

Section 2 of the FAA provides in relevant part:  "A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. This statute stands as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *accord Garza v. Thomas Jude Henry, P.C.*, CIVIL NO. SA-14-CA-877-OLG, 2014 WL 11332307, at *2 (W.D. Tex. Dec. 4. 2014) (adopted by 2015 WL 11669640 (W.D. Tex. Jan. 12, 2015) (citing *Moses H. Cone Hosp.*). The "central purpose" of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-4 (1995) (internal quotations and citations omitted); *see also Perry*, 482 U.S. at 490 (stating that under FAA, arbitration agreements must be "rigorously enforced"); *Staggs v. Dallas Peterbilt, Ltd., L.L.P.*, No. Civ. 3:05-CV-1452H, 2006 WL 74077097, at *3 (N.D. Tex. Mar. 16, 2006) (citing *Mastrobuono*).

In deciding whether to compel arbitration, the trial court is generally tasked with determining two "gateway" issues:  (1) whether there was an agreement to arbitrate; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002).  To determine whether a valid and enforceable agreement to arbitrate exists, the Arbitration Agreement must be examined under Texas state law regarding contract formation.

*See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[I]n applying general state law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], . . . due regard must be given to the federal policy favoring arbitration." *Volt Info. Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (internal citations omitted); *see also Staggs*, 2006 WL 74077097, at *1.

When determining whether a party has in fact assented to the terms of an agreement, courts look to the communications between the parties and the acts and circumstances surrounding the communications. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A party seeking to compel arbitration does not need to prove with 100% certainty that the opposing party agreed to be bound by an agreement to arbitrate. *Holmes v. Air Liquide USA LLC*, No. CIV.A. H-11-2580, 2012 U.S. Dist. LEXIS 10678, 2012 WL 267194, at **9-10 (S.D. Tex. Jan. 30, 2012), *aff'd sub nom. Holmes v. Air Liquide USA, L.L.C.*, 498 F. App'x 405 (5th Cir. 2012). Rather, the movant need only establish, by a preponderance of the evidence, that a valid agreement to arbitrate exists. *Id.*; *see also Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012) ("The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence.").

### 1.     Plaintiff Entered Into a Valid, Enforceable Arbitration Agreement

Here, Plaintiff entered into a valid and enforceable agreement to arbitrate her claims. Plaintiff consented to the Arbitration Agreement by completing the online employment application and the online onboarding process. Ex. 1 at ¶¶ 6-12. During the online application phase and employee onboarding phase, Plaintiff was required to log in to the RHH system by using a unique username and password known only to her. *Id.* at ¶¶ 5-6, 17. Plaintiff consented to receiving and responding to documents and notices electronically. *Id.* at ¶¶ 6-12. She was

also informed that she would be subject to an Arbitration Agreement as a condition of employment.  *Id*. at ¶¶ 6, 8-10, 15.

After receiving an offer of employment, Plaintiff completed the online onboarding paperwork in RHH, which included the Arbitration Agreement.  *Id*. at ¶¶ 14-18.  Plaintiff viewed the Arbitration Agreement, which activated the "Sign" link next to the Arbitration Agreement. *Id*.  Plaintiff could not have electronically signed the Arbitration Agreement until she clicked the "View" button to review the document.  *Id*.  After she electronically signed the Arbitration Agreement, a record was created in RHH in Plaintiff's "Onboarding" tab.  *Id*. According to the RHH file for Plaintiff, she electronically signed the Arbitration Agreement on September 27, 2016, at 8:08 a.m.  *Id*.  It is clear that Plaintiff agreed to and is bound by the Arbitration Agreement.

The Arbitration Agreement is also based on valid consideration because both Plaintiff and Starbucks are required to arbitrate disputes covered by the Arbitration Agreement.  *See Lizalde v. Vista Quality Mkts.*, 746 F.3d 222, 225 (5th Cir. Tex. 2014) (applying Texas law and stating that, "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement.").  Accordingly, when Plaintiff electronically accepted the terms of the Arbitration Agreement, a valid and enforceable agreement to arbitrate was formed.  *See Thick v. Dolgencorp of Tex., Inc.*, 2017 U.S. Dist. LEXIS 4258, 5-6 (E.D. Tex. Jan. 11, 2017) ("Texas has adopted the Uniform Electronic Transactions Act (Tex. Bus. & Com. Code §§ 322.001-322.021), which provides that electronic signatures may be used in contract formation.") (citing Tex. Bus. & Com. Code § 322.009(a)); *Holmes*, 2012 U.S. Dist. LEXIS 10678, at *5-8 (finding mutual assent because the evidence established "that Plaintiff, using her unique login and password, accessed, reviewed, and accepted the terms of the ADR Agreement.").

Plaintiff is bound by the Arbitration Agreement for yet another reason.  Under Texas law, if an employee decides to continue his or her employment after receiving notice of their employer's arbitration policy, then the employee "has accepted the [policy] as a matter of law." *See In re Halliburton Co.*, 80 S.W. 3d 556, 568 (Tex. 2002) (citing *Hathaway v. General Mills, Inc.*, 711 S.W. 2d 227, 229 (Tex. 1986)).  Here, the Arbitration Agreement was a condition of Plaintiff's employment.  Plaintiff received notice of the Arbitration Agreement during her application for employment, and again after hire during her onboarding process.  She did not refuse or end her employment relationship at this point, but rather, continued her employment. By continuing her employment with Starbucks, Plaintiff is deemed to have agreed to the Arbitration Agreement as a matter of law.

Indeed, another federal court has recently found **the exact Arbitration Agreement at issue here** to be valid and enforceable.  *Horne v. Starbucks Corp., et. al*, 2:16-CV-02727-MCE-CKD, 2017 WL 2813170, at *2 (E.D. Cal. June 29, 2017) (granting Starbucks' motion to compel arbitration pursuant to this Arbitration Agreement).

C.     **The Arbitration Agreement Covers Plaintiff's Claim and Delegates Enforceability or Application of the Arbitration Agreement to the Arbitrator**

The Arbitration Agreement undeniably covers Plaintiff's claims. Within her Complaint, Plaintiff asserts claims under Title VII for harassment, discrimination and retaliation.  The Arbitration Agreement applies to "any statute, local ordinance, or common law relating to [Plaintiff's] employment, including those concerning any element of compensation, **harassment, discrimination, retaliation**, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment."  Ex. 1-J.

Moreover, to the extent there are any challenges to or disputes regarding the enforceability or validity of the Arbitration Agreement, those issues are for an arbitrator to

decide, not this Court.  The arbitrator decides issues of arbitrability and/or enforceability where the parties clearly and unmistakably agreed to delegate them to the arbitrator.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (citing *Rent-A-Center, West, Inc.*, 561 U.S. at 68-69 (2010)).

Here, the Arbitration Agreement expressly incorporates the rules of the American Arbitration Association (AAA), which specifically provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to existence, scope, or validity of the arbitration agreement."  AAA, Employment Arbitration Rules, Rule 6a. Courts have held that incorporating the AAA's rules to empower the arbitrator to determine gateway issues in an Arbitration Agreement is clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide these issues.  *See, e.g., Petrofac, Inc., v. Dynmcdermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("We agree with most of our sister circuits that the express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").  Accordingly, the parties have delegated the authority to an arbitrator to decide any disputes as to the validity or enforceability of the Arbitration Agreement.

**D.**      **Doubts are Resolved in Favor of Arbitration**

Under the FAA, an arbitration agreement must be enforced where a valid, written agreement exists and the claims made are within the scope of the agreement.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460

U.S. at 24-25.   Indeed, district courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960).

Accordingly, to the extent any doubts exist as to whether Plaintiff's claims are covered by the Arbitration Agreement, any such doubts should be resolved in favor of arbitration.

E.   **Texas Law Also Requires Enforcement of the Arbitration Agreement**

Even if the FAA does not apply to the Arbitration Agreement – which it does – this Court must enforce the Arbitration Agreement under Texas law.  *See Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App. – Dallas 2001, pet. denied); *Anglin v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (reiterating that Texas courts favor arbitration as a method of resolving legal disputes).   Under Texas Civil Practices and Remedies Code § 171.021, a court shall order the parties to arbitrate on application of a party showing:  (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate.   Because the law strongly favors arbitration, the Texas Supreme Court has instructed courts to resolve any doubts about arbitration agreements in favor of arbitration.  *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) ("Arbitration of disputes is strongly favored under the federal and state law.").   As the Texas Supreme Court has stated, if a valid arbitration agreement exists and it encompasses the claims raised in the suit, the trial court has no discretion but to stay its proceedings and compel arbitration.  *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002).   Therefore, under both federal and state law, the Arbitration Agreement must be enforced.

**F.**     **Plaintiff's Lawsuit should be Dismissed, or Alternatively, Stayed Pending Arbitration**

Because all of Plaintiff's claims are covered by the Arbitration Agreement, the lawsuit should be dismissed.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."); *see also Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999) (interpreting *Alford* to mean "district courts have discretion to dismiss cases in favor of arbitration").

Alternatively, this case should be stayed pending arbitration.  Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is preferable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

## IV.
## PRAYER

Defendant Starbucks Corporation respectfully requests that the Court grant its Motion and compel arbitration of Plaintiff Taylor Woods' claims and dismiss this lawsuit or, alternatively, stay this lawsuit pending the resolution of the arbitration proceeding.

Dated:  August  3, 2017                        Respectfully submitted,


                                               /s/ Celeste R. Yeager
                                               Celeste R. Yeager (Attorney-in-Charge)
                                               State Bar No. 00797715
                                               cyeager@littler.com
                                               Victoria Nsikak
                                               State Bar No. 24077487
                                               vnsikak@littler.com

                                               LITTLER MENDELSON
                                               A PROFESSIONAL CORPORATION
                                               2001 Ross Avenue
                                               Suite 1500, Lock Box 116
                                               Dallas, TX  75201-2931
                                               214.880.8100 (Telephone)
                                               214.880.0181 (Telecopier)

                                               **ATTORNEYS FOR DEFENDANT
                                               STARBUCKS CORPORATION**

## <u>CERTIFICATE OF CONFERENCE</u>

On August 1, 2017, Counsel for Defendant Celeste Yeager spoke with Counsel for Plaintiff Ronald Huff regarding Defendant Starbucks Corporation's Motion to Dismiss and Compel Arbitration.  Counsel indicated that he is opposed to this Motion.

*/s/ Celeste R. Yeager*
Celeste R. Yeager

## <u>CERTIFICATE OF SERVICE</u>

On August 3, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the Electronic Case Filing System of the Court.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following counsel of record:

Ronald R. Huff
Attorney and Counselor at Law
112 South Crockett Street
Sherman, TX  75090
ronhuff@gcecisp.com

*/s/ Celeste R. Yeager*
Celeste R. Yeager
